[No. B226067. Second Dist., Div. One. Mar. 13, 2012.]

TAIHEIYO CEMENT U.S.A., INC., Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Counsel

Reed Smith, Margaret M. Grignon, Mardiros Hagop Dakessian, Zareh A. Jaltorossian, Jesse L. Miller and Joonsik Maing for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, W. Dean Freeman, Marta Lynn Smith and Diane S. Shaw, Deputy Attorneys General, for Defendant and Respondent.

Opinion

**MALLANO, P. J.**—Taiheiyo Cement U.S.A., Inc. (Taxpayer), appeals from a judgment entered after the trial court granted Franchise Tax Board's (FTB) motion for judgment on the pleadings on Taxpayer's complaint for declaratory relief and refund of taxes, interest, and penalties paid for tax years 1998 and 1999 following FTB's disallowance of enterprise zone sales and use tax credits claimed by Taxpayer under Revenue and Taxation Code section 23612.2 for the purchase of current expense assets.[1]

Taxpayer contends that the trial court erred in granting FTB's motion for judgment on the pleadings, claiming a plain reading of section 23612.2 authorizes a sales and use tax credit "for all qualified property, whether expensed or depreciated." Taxpayer also contends that the court erred by granting the motion for judgment on the pleadings on the declaratory relief cause of action, arguing that FTB's "unstated policy of imposing a capitalization requirement for tax credits" is an invalid "underground regulation."

Construing section 23612.2 narrowly against Taxpayer, which must show it comes squarely within the statute expressly authorizing the tax credit, we conclude that the sales and use tax credit of section 23612.2 is not available in connection with the purchase of current expense assets but only with the purchase of capital assets because the definition of "qualified property" refers to the terms "placed in service" and "basis," which are terms used generally with respect to capital assets. (§ 23612.2, subds. (b)(2)(B) & (D), (e).) Based on our reading of the statute as a whole, we conclude the court did not err in granting FTB's motion for judgment on the pleadings and affirm the judgment.

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

# BACKGROUND

## Taxpayer's complaint

On September 28, 2009, Taxpayer filed a complaint against FTB for refund of taxes, interest, and penalties paid for the 1998 and 1999 tax years and for declaratory relief, costs, and attorney fees, alleging as follows. Taxpayer is a manufacturer of hydraulic cement with a manufacturing plant in Colton, which is located in an economically depressed area designated by the Legislature as an "enterprise zone." Taxpayer qualified for enterprise zone sales and use tax credits pursuant to section 23612.2 for tax years 1998 and 1999 because it purchased qualified property within the meaning of section 23612.2, including machinery and machinery parts used for fabricating, processing, assembly, and manufacturing, and placed the property in service in an enterprise zone.

In 2001, FTB examined Taxpayer's 1998 and 1999 tax returns and disallowed the sales and use tax credits claimed by Taxpayer. On December 29, 2004, FTB issued notices of proposed assessment to Taxpayer for tax years 1998 and 1999. Taxpayer timely filed a protest and paid the taxes, interest, and penalties assessed.

Ultimately, the Board of Equalization issued its final decision sustaining FTB's action, concluding that "currently expensed assets are not 'qualified property' within the meaning of Revenue and Taxation Code section 23612.2, and thus . . . [Taxpayer] was not entitled to the Enterprise Zone sales and use tax credit for purchases of such assets."

In its complaint, Taxpayer sought $4,980,165 in taxes, interest, and penalties paid for tax years 1998 and 1999. The complaint also contained a cause of action for declaratory relief, seeking an interpretation of section 23612.2, asserting that by requiring qualified property to be capitalized, FTB adopted an " 'underground regulation[]' " with respect to the sales and use tax credit.

## FTB's motion for judgment on the pleadings

FTB filed a motion for judgment on the pleadings, urging that the complaint failed to state facts sufficient to constitute an action against FTB because the sales and use tax credit set forth in section 23612.2 is available only for sales tax paid on the purchase of capital assets, which have a useful life of more than one year. FTB contended that it properly allowed the credit for sales tax paid by Taxpayer on capital assets and disallowed the credit for

sales tax paid by Taxpayer on current expense assets, which are consumed within one year.

On July 16, 2010, the trial court granted FTB's motion for judgment on the pleadings without leave to amend and entered judgment for FTB and against Taxpayer. Taxpayer appealed.

## DISCUSSION

Taxpayer contends that a plain reading of section 23612.2 authorizes a sales and use tax credit "for all qualified property, whether expensed or depreciated." We disagree. Construing section 23612.2 narrowly against Taxpayer, which must show it comes squarely within the statute expressly authorizing the tax credit, we conclude that the sales and use tax credit of section 23612.2 is not available in connection with the purchase of current expense assets but only with the purchase of capital assets because the definition of "qualified property" refers to the terms "placed in service" and "basis," which are terms used generally with respect to capital assets. (§ 23612.2, subds. (b)(2)(B) & (D), (e).) Based on our reading of the statute as a whole, we conclude that Taxpayer is not entitled to the sales and use tax credit.

A motion for judgment on the pleadings may be made by the defendant on the ground that the complaint does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) "The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. We may also consider matters subject to judicial notice. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory. [Citation.]" (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298 [38 Cal.Rptr.3d 316].)

"[T]ax credits are strictly matters of legislative grace and are to be construed against the taxpayer (see, e.g., *Great Western Financial Corp.* v. *Franchise Tax Bd.* [(1971)] 4 Cal.3d 1, 5 [92 Cal.Rptr. 489, 479 P.2d 993]; [citation] . . .)." (*Christman v. Franchise Tax Bd.* (1976) 64 Cal.App.3d 751, 757 [134 Cal.Rptr. 725]; see *Great Western Financial Corp. v. Franchise Tax Bd., supra*, 4 Cal.3d at pp. 5–6 ["Deductions may be allowed or withheld by the Legislature as it sees fit [citations] and such deductions, like credits and

exemptions, are to be narrowly construed against the taxpayer . . . ."]; *Estate of Giolitti* (1972) 26 Cal.App.3d 327, 331 [103 Cal.Rptr. 38] ["[W]here doubt arises a taxing statute must be construed in favor of the taxpayer and against the government [citations], nevertheless deductions, exemptions or credits applicable thereto are to be narrowly construed in favor of the state and against the taxpayer . . . ."].)

In *Krumpotich v. Franchise Tax Bd.* (1994) 26 Cal.App.4th 1667 [31 Cal.Rptr.2d 896], the Court of Appeal reversed the trial court's ruling that the taxpayers were entitled to claim a tax credit, stating, " 'It is fundamental . . . that the extent of allowable deductions is dependent exclusively upon legislative grace and does not turn upon equitable considerations[ and] that a taxpayer claiming a deduction must bring himself *squarely within the terms of a statute expressly authorizing it* . . . .' " (*Id.* at p. 1671, italics added.)

■ While "tax exemption provisions must be strictly construed in favor of the taxing agency and against the taxpayer . . . ," the "construction must be fair and reasonable with due regard for the ordinary meaning of the language used and the objective sought to be accomplished. [Citation.] Moreover, it is equally well settled that fundamental rules of statutory construction require ascertainment of the legislative intent 'so as to effectuate the purpose of the law [and] "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.]' " (*Kaiser Steel Corp. v. County of Solano* (1979) 90 Cal.App.3d 662, 666–667 [153 Cal.Rptr. 546].)

The 1984 Enterprise Zone Act, which designated enterprise zones, and the 1984 Employment and Economic Incentive Act, which targeted economic development areas, were repealed and parts of each act were combined and enacted in 1996 as the Enterprise Zone Act (Gov. Code, §§ 7070–7089) "to provide for the designation of zones by the Trade and Commerce Agency, according to specified criteria, pursuant to which certain entities within each zone may receive regulatory, tax, and other incentives for economic and employment development and private investment." (Legis. Counsel's Dig., Sen. Bill No. 2023, 6 Stats. 1996 (1995–1996 Reg. Sess.) Summary Dig., p. 399.) Recognizing that "[t]he health, safety, and welfare of the people of California depend upon the development, stability, and expansion of private business, industry, and commerce, and there are certain areas within the state that are economically depressed due to a lack of investment in the private sector," the Legislature enacted the 1996 Enterprise Zone Act "to stimulate

business and industrial growth in the depressed areas of the state by relaxing regulatory controls that impede private investment" and "to help attract business and industry to the state, to help retain and expand existing state business and industry, and to create increased job opportunities for all Californians." (Gov. Code, § 7071, subds. (a), (b).) The 1996 Enterprise Zone Act includes tax incentives such as a hiring income tax credit (§ 23622.7); a net interest deduction for loans to enterprise zone businesses (§ 24384.5, subd. (a)); a net operating loss deduction (§ 24416.1, subd. (a)); an election to treat 40 percent of the cost of section 24356.7 property as an expense that is not chargeable to a capital account (§ 24356.7, subd. (a)); and the sales and use tax credit (§ 23612.2).

Section 23612.2, subdivision (a) provides for a tax credit "for the taxable year [in] an amount equal to the sales or use tax paid or incurred during the taxable year by the taxpayer in connection with the taxpayer's purchase of qualified property."[2]

---

[2] Section 23612.2 provides as follows: "(a) There shall be allowed as a credit against the 'tax' (as defined by Section 23036) for the taxable year an amount equal to the sales or use tax paid or incurred during the taxable year by the taxpayer in connection with the taxpayer's purchase of qualified property.

"(b) For purposes of this section:

"(1) 'Taxpayer' means a corporation engaged in a trade or business within an enterprise zone.

"(2) 'Qualified property' means:

"(A) Any of the following:

"(i) Machinery and machinery parts used for fabricating, processing, assembling, and manufacturing.

"(ii) Machinery and machinery parts used for the production of renewable energy resources.

"(iii) Machinery and machinery parts used for either of the following:

"(I) Air pollution control mechanisms.

"(II) Water pollution control mechanisms.

"(iv) Data-processing and communications equipment, including, but not limited to, computers, computer-automated drafting systems, copy machines, telephone systems, and faxes.

"(v) Motion picture manufacturing equipment central to production and postproduction, including, but not limited to, cameras, audio recorders, and digital image and sound processing equipment.

"(B) The total cost of qualified property purchased and *placed in service* in any taxable year that may be taken into account by any taxpayer for purposes of claiming this credit shall not exceed twenty million dollars ($20,000,000).

"(C) The qualified property is used by the taxpayer exclusively in an enterprise zone.

"(D) The qualified property is purchased and *placed in service* before the date the enterprise zone designation expires, is no longer binding, or becomes inoperative.

"(3) 'Enterprise zone' means the area designated as an enterprise zone pursuant to Chapter 12.8 (commencing with Section 7070) of Division 7 of Title 1 of the Government Code.

"(c) If the taxpayer has purchased property upon which a use tax has been paid or incurred, the credit provided by this section shall be allowed only if qualified property of a comparable quality and price is not timely available for purchase in this state.

The definition of "qualified property" includes "[m]achinery and machinery parts used for fabricating, processing, assembling, and manufacturing." (§ 23612.2, subd. (b)(2)(A)(i).) The definition of "qualified property" also requires that "[t]he total cost of qualified property purchased and *placed in service* in any taxable year that may be taken into account by any taxpayer for purposes of claiming this credit shall not exceed twenty million dollars ($20,000,000)"; the qualified property must be used by the taxpayer "exclusively in an enterprise zone"; and the qualified property must be "purchased and *placed in service* before the date the enterprise zone designation expires, is no longer binding, or becomes inoperative." (§ 23612.2, subd. (b)(2)(B)–(D), italics added.)

Section 23612.2, subdivision (e) further provides: "Any taxpayer who elects to be subject to this section shall not be entitled *to increase the basis of*

---

"(d) In the case where the credit otherwise allowed under this section exceeds the 'tax' for the taxable year, that portion of the credit which exceeds the 'tax' may be carried over and added to the credit, if any, in the following year, and succeeding years if necessary, until the credit is exhausted. The credit shall be applied first to the earliest taxable years possible.

"(e) Any taxpayer who elects to be subject to this section shall not be entitled to *increase the basis of the qualified property* as otherwise required by Section 164(a) of the Internal Revenue Code with respect to sales or use tax paid or incurred in connection with the taxpayer's purchase of qualified property.

"(f)(1) The amount of credit otherwise allowed under this section and Section 23622.7, including any credit carryover from prior years, that may reduce the 'tax' for the taxable year shall not exceed the amount of tax which would be imposed on the taxpayer's business income attributable to the enterprise zone determined as if that attributable income represented all of the income of the taxpayer subject to tax under this part.

"(2) Attributable income shall be that portion of the taxpayer's California source business income that is apportioned to the enterprise zone. For that purpose, the taxpayer's business income attributable to sources in this state first shall be determined in accordance with Chapter 17 (commencing with Section 25101). That business income shall be further apportioned to the enterprise zone in accordance with Article 2 (commencing with Section 25120) of Chapter 17, modified for purposes of this section in accordance with paragraph (3).

"(3) Business income shall be apportioned to the enterprise zone by multiplying the total California business income of the taxpayer by a fraction, the numerator of which is the property factor plus the payroll factor, and the denominator of which is two. For purposes of this paragraph:

"(A) The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in the enterprise zone during the taxable year, and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used in this state during the taxable year.

"(B) The payroll factor is a fraction, the numerator of which is the total amount paid by the taxpayer in the enterprise zone during the taxable year for compensation, and the denominator of which is the total compensation paid by the taxpayer in this state during the taxable year.

"(4) The portion of any credit remaining, if any, after application of this subdivision, shall be carried over to succeeding taxable years, as if it were an amount exceeding the 'tax' for the taxable year, as provided in subdivision (d).

"(g) The amendments made to this section by the act adding this subdivision shall apply to taxable years beginning on or after January 1, 1998." (Italics added.)

*the qualified property* as otherwise required by Section 164(a) of the Internal Revenue Code with respect to sales or use tax paid or incurred in connection with the taxpayer's purchase of qualified property." (Italics added.)

As we shall explain in the following discussion which begins with a brief review of general accounting terms, Taxpayer fails to demonstrate that it falls squarely within the statute expressly authorizing the tax credit and therefore is entitled to a refund. "California imposes a franchise tax on corporations doing business within the state. The franchise tax is measured by net income derived from or attributable to in-state sources. (Rev. & Tax. Code, §§ 23151, 25101.)" (*Tenneco West, Inc. v. Franchise Tax Bd.* (1991) 234 Cal.App.3d 1510, 1518 [286 Cal.Rptr. 354], fn. omitted.) Net income means gross income less allowable deductions. (§ 24341.) Ordinary and necessary expenses paid or incurred during the taxable year in carrying on a business can be deducted from gross income. (§ 24343; Int.Rev. Code, § 162(a).) On the other hand, capital assets which have "a useful life which extends substantially beyond the close of the taxable year" are subject to depreciation. (26 C.F.R. § 1.461-1(a)(1) (2011).) "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion[ and] wear and tear . . ." of "property used in the trade or business" or of "property held for the production of income." (§ 24349, subd. (a)(1)–(2); Int.Rev. Code, § 167(a)(1)–(2).)

In general, the term "placed in service" marks the beginning of the depreciation period for capital assets. (Federal Tax Coordinator (2d ed. 2011) Cost Recovery System, Depreciation, Amortization, ch. L, par. L-7601 ["The period for depreciation of an asset begins when the asset is 'placed in service.' "]; Rev. Rul. 76-238, 1976-1 C.B. 55, p. 1 ["the period for depreciation of an asset shall begin when the asset is placed in service"]; 47A C.J.S. (2012) Internal Revenue, § 232, p. 789 ["The period for depreciation begins when an asset is placed in service and ends when the asset is retired from service."].)

■ Our review of section 23612.2 persuades us that by using the term "placed in service" in defining "qualified property," the Legislature intended the sales and use tax credit to apply to capital assets. As noted, section 23612.2, subdivision (b)(2) requires that the total cost of qualified property purchased and *placed in service* in any taxable year shall not exceed $20 million and shall be purchased and *placed in service* before the date the enterprise zone designation expires. (§ 23612.2, subd. (b)(2)(B), (D).) As we must, we give significance to the Legislature's use of the phrase "placed in service." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303,

801 P.2d 1054] ["We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous."].)

■ Because section 23612.2, subdivision (b)(2)(B) and (D) defines qualified property as property that must be "placed in service" in order for the credit to apply and depreciation begins when an asset is "placed in service," we conclude that the Legislature intended qualified property to consist of capital assets that are depreciated.

Nonetheless, Taxpayer challenges that construction of the statute, arguing that it is entitled to the sales and use tax credit because it met the definition of qualified property. Taxpayer argues that the Legislature did not include in section 23612.2 an express capitalization requirement or use terms such as " '[Internal Revenue Code] Section 1245 property,' " " 'depreciable property,' " and " 'property chargeable to capital account,' " as it has in other statutes that refer to capital assets. Taxpayer contends that this is not mere oversight and that the term "placed in service" in the context of section 23612.2 does not refer to capital assets but relates to limiting "the amount and timing of the credit."

We are not persuaded by Taxpayer's citation to the first of two paragraphs of title 26 of the Code of Federal Regulations part 1.46-3(d)(1)(ii) (2011) for the proposition that " 'placed in service' generally relates to timing" and therefore the Legislature did not intend to "alter the express definition of qualified property by inserting a capitalization requirement." Title 26 of the Code of Federal Regulations part 1.46-3(d)(1) (2011), which precedes the cited paragraph and is not cited by Taxpayer, is entitled, "Placed in service," and states: "For purposes of the credit allowed by [Internal Revenue Code] section 38, property shall be considered placed in service in the earlier of the following taxable years: [¶] (i) The taxable year in which, under the taxpayer's depreciation practice, the period for depreciation with respect to such property begins." (Italics omitted.)[3] The first paragraph of part 1.46-3(d)(1)(ii) (2011), which is cited by Taxpayer, next states: "or [¶] (ii) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." But the second paragraph of part 1.46-3(d)(1)(ii) (2011), which is not cited by Taxpayer, continues: "Thus, if property meets the conditions of subdivision (ii) of this subparagraph in a taxable year, it shall be considered placed in service in such year notwithstanding that the period for depreciation with respect to such property begins in a succeeding taxable

---

[3] Internal Revenue Code section 38 concerns business credit against taxes.

year because, for example, under the taxpayer's depreciation practice such property is accounted for in a multiple asset account and depreciation is computed under an 'averaging convention' (see § 1.167(a)-10), or depreciation with respect to such property is computed under the completed contract method, the unit of production method, or the retirement method." Accordingly, by reading the entirety of title 26 of the Code of Federal Regulations part 1.46-3(d)(1) (2011), and not just selected portions, we determine that "placed in service" in that context refers to the "state of readiness" of the property for purposes of depreciation of capital assets.

Taxpayer further urges that the term "placed in service" applies to current expense assets because a number of statutes include " 'placed in service' language and permit capital assets to be currently expensed or deducted in whole or in part." But we note that the statutes cited by Taxpayer refer to *capital assets* that must be depreciated unless a taxpayer affirmatively elects to expense the assets as permitted under the statute.[4] FTB and Taxpayer cite many more statutes to support their respective positions, that "placed in service" refers to capital assets or that "placed in service" merely refers to timing or amounts. But we decline to set forth an exhaustive examination of each statute cited by the parties. The use of the term "placed in service" in some circumstances does not affect our ultimate conclusion that the Legislature intended to allow the sales and use tax credit under section 23612.2 only in connection with the purchase of capital assets, as we explain in our review of the term "basis."

"The basis of property shall be the cost of the property . . . ." (§ 24912; see Int.Rev. Code, § 1012.) A reasonable depreciation deduction allowance is permitted for the exhaustion and wear and tear of property used in the trade or business or of property held for the production of income. (§ 24349, subd. (a)(1)–(2); Int.Rev. Code, § 167(a)(1)–(2).) "The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in [Internal Revenue Code

---

[4] Taxpayer cites the following statutes, among others: section 24356, subdivision (b)(3) (taxpayer may elect, subject to limitations, to expense certain depreciable business assets regarding property "placed in service" during the taxable year); section 24356.6, subdivisions (a) and (c)(1)(C) (taxpayer may elect to treat 40 percent of cost of depreciable assets "[p]urchased and placed in service before the date the targeted tax area designation expires" as an expense that is not chargeable to a capital account); section 24356.7, subdivisions (a) and (c)(1)(C) (taxpayer may elect to treat 40 percent of cost of depreciable assets "[p]urchased and placed in service" for use in enterprise zone and before the date the enterprise zone designation expires as an expense that is not chargeable to a capital account); section 24356.8, subdivisions (a) and (b)(1) (taxpayer may elect to treat 40 percent of cost of depreciable assets for the taxable year in which the taxpayer places the property in service as an expense that is not chargeable to a capital account).

section] 1011, for the purpose of determining the gain on the sale or other disposition of such property." (Int.Rev. Code, § 167(c)(1).) Internal Revenue Code section 1011 defines the adjusted basis for determining the gain or loss from the sale or other disposition of property as the basis under Internal Revenue Code section 1012, among other code sections. Proper adjustments with regard to the property shall be made for expenditures, receipts, losses, or other items properly chargeable to capital account and for exhaustion, wear and tear, obsolescence, amortization, and depletion. (§ 24916, subds. (a), (b); Int.Rev. Code, § 1016(a)(1)–(2).) Accordingly, "basis" commonly is used in connection with capital assets which are depreciated.

In enacting section 23612.2, subdivision (e), the Legislature restricted a taxpayer from claiming a full credit for the sales and use tax paid, then receiving a double benefit by using the amount of that sales and use tax (for which the taxpayer received a full credit) to increase the basis of the qualified property. Because section 23612.2, subdivision (e) is intended to be read concurrently with subdivisions (a), (b), (c), (d), (f), and (g), we view subdivision (e)'s condition that any taxpayer who elects to take the sales and use tax credit shall not be entitled to "increase the basis of the qualified property" as support for our determination that the sales and use tax credit applies in connection with capital assets. (§ 23612.2, subd. (e).) That is, section 23612.2, subdivision (e) assumes that all qualified property has a basis, and therefore is a capital asset.

Nevertheless, Taxpayer contends that " 'basis' means 'cost,' and it is a term that applies equally to expensed assets and depreciated assets." Taxpayer argues that the term "basis" in section 23612.2, subdivision (e) "does not purport to add elements" to the definition of "qualified property." Taxpayer further urges that the purpose of section 23612.2, subdivision (e) is to prohibit a taxpayer from taking the sales and use tax credit, and later adding the same sales tax to the cost basis of the qualified property and deducting the property as a current expense. But because we consider the statute as a whole, Taxpayer does not convince us that the Legislature intended to use the term "basis" in connection with current expense assets.

Taxpayer cites *Hillsboro National Bank v. Commissioner* (1983) 460 U.S. 370, 395 [75 L.Ed.2d 130, 103 S.Ct. 1134] (*Hillsboro*), for the proposition that the term "basis" does not reasonably imply a capitalization requirement because "current expense and depreciation deductions affect the timing of the deduction of the entire cost of a business asset but in both cases the basis of the asset is reduced by the amount of the deduction." In *Hillsboro*, the

respondent corporation, which operated a dairy, deducted the full cost of cattle feed purchased for use in its operations under Internal Revenue Code section 162(a). Then, two days into the next taxable year, respondent liquidated and distributed its assets, including the cattle feed, to its shareholders. (460 U.S. at p. 374.) "Relying on [Internal Revenue Code section] 336, which shields [a] corporation from the recognition of gain on the distribution of property to its shareholders on liquidation, [respondent] reported no income on the transaction." (460 U.S. at pp. 374–375, fn. omitted.) The United States Supreme Court determined that the tax benefit rule, which requires the inclusion of income when events occur that are fundamentally inconsistent with an earlier deduction, required the respondent to recognize income with respect to the distribution of expensed assets (which had been previously deducted as a business expense) to its shareholders on liquidation. (460 U.S. at p. 372.) Thus, where a taxpayer deducts the cost of an asset as an " 'ordinary and necessary expense[]' " under Internal Revenue Code section 162(a) but later sells the asset rather than consuming it while carrying on the trade or business, the taxpayer "would lose [the] deduction, for the basis of the asset would be zero [citation], so [the taxpayer] would recognize the full amount of the proceeds on sale as gain." (460 U.S. at p. 395.)

Taxpayer's citation to *Hillsboro*, where "basis" was used in general terms concerning gain for income tax purposes regarding assets that were expensed and subsequently distributed to shareholders, fails to persuade us that the term "basis," as used in section 23612.2, refers to current expenses.

Taxpayer's next argument supports our conclusion that section 23612.2 was intended by the Legislature to apply in connection with the purchase of capital assets. Taxpayer points to section 24356.7, which permits a taxpayer to elect to treat 40 percent of the cost of depreciable assets purchased and placed in service for use in an enterprise zone as an expense that is not chargeable to a capital account, as authority for its argument that a taxpayer may expense qualified property and also take a section 23612.2 sales and use tax credit for the same property. In making its argument, Taxpayer refers to the following sentence fragment contained in an FTB publication, of which we have taken judicial notice: " 'The property may qualify for the business expense deduction or the sales or use tax credit, *or both*.' " (Quoting Cal. Franchise Tax Bd., Frequently Asked Questions About Enterprise Zone Tax Incentives (July 2003 rev.) <http://www.ftb.ca.gov/forms/misc/1126.pdf> [as of Mar. 13, 2012], italics added by Taxpayer.)[5] But the entire sentence states: "If you acquired the property through a leasing arrangement that constitutes a

---

[5] Judicial notice may be taken of official acts of the executive department of this state. (Evid. Code, § 452, subd. (c).) "Official acts include records, reports and orders of administrative agencies." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 [104 Cal.Rptr.2d 439].)

financial (conditional sales) contract, the property may qualify for the business expense deduction or the sales or use tax credit, or both." (*Ibid.*) Taxpayer's complaint did not allege that it acquired the property through a leasing arrangement constituting a financial (conditional sales) contract. Instead, Taxpayer alleged that it purchased machinery and machinery parts. Thus, Taxpayer's reference to the FTB publication does not advance its argument. And the business expense deduction election set forth in section 24356.7 is strictly limited. Section 24356.7 permits only 40 percent of the eligible cost of the section 24356.7 property to be allowed as a deduction. (§ 24356.7, subd. (a).) Also, the aggregate cost of the section 24356.7 property cannot exceed $100,000 in the taxable year of designation. (§ 24356.7, subd. (f).) And section 24356.7, subdivision (e) prohibits additional depreciation pursuant to section 24356 for the remaining 60 percent of the property's cost, stating: "Any taxpayer who elects to be subject to this section shall not be entitled to claim additional depreciation pursuant to Section 24356 with respect to any property that constitutes Section 24356.7 property." The Legislature clearly intended that if a taxpayer chose to expense 40 percent of section 24356.7 property and take the sales and use tax credit, it could do so only under strict limitations.

Therefore, contrary to Taxpayer's assertion, section 24356.7 supports our conclusion that the Legislature did not intend to allow a taxpayer to deduct 100 percent of a current business expense and also to take the sales and use tax credit.

■ Mindful of the Legislature's recognition that enterprise zones are economically depressed due to lack of investment in the private sector and the express legislative intent to "attract business and industry to the state, to help retain and expand existing state business and industry, and to create increased job opportunities for all Californians" (Gov. Code, § 7071, subd. (b)), we agree with FTB that the Legislature intended the sales and use tax credit to encourage purchase of capital assets that commit long-term resources to economically depressed communities.

■ Accordingly, we conclude that the sales and use tax credit of section 23612.2 is not available in connection with the purchase of current expense assets but only in connection with the purchase of capital assets. Thus, Taxpayer has failed to show it comes squarely within the statute expressly authorizing the tax credit and is entitled to a refund. The trial court did not err in granting FTB's motion for judgment on the pleadings. In light of our conclusion, we need not address Taxpayer's argument that the court erred by granting FTB's motion for judgment on the pleadings on the declaratory relief cause of action seeking a declaration that FTB's "unstated policy of imposing a capitalization requirement for tax credits" is an invalid "underground regulation."

## DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

Rothschild, J., and Chaney, J., concurred.

A petition for a rehearing was denied April 4, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201948.