Filed 9/18/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| BENJAMIN NATKIN, | B241949 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS131831) |
| v. | |
| CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Ann I. Jones, Judge. Affirmed.


Benjamin Natkin, in pro. per., for Plaintiff and Appellant.


Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Richard Waldo, Leslie P. McElroy, and Eric D. Bates, Deputy Attorneys General for Defendant and Respondent.

Benjamin Natkin (appellant) appeals from the denial of his petition for writ of mandate and administrative mandate filed in the superior court. Through the writ, appellant sought issuance of an order directing the Unemployment Insurance Appeals Board (UIAB) to vacate its decision denying him benefits for the week ending May 8, 2010, and ordering the Employment Development Department (EDD) to pay appellant benefits for the week in question. We find no error in the trial court's decision denying the petition, therefore we affirm.

## CONTENTIONS

Appellant contends that the UIAB and the superior court erred in determining that appellant earned wages for the week ending May 8, 2010, as that term is defined in Unemployment Insurance Code sections 1252 and 1279, and thus was not eligible to receive unemployment benefits for that week.[1]

Appellant also argues that the superior court erred in reaching the merits of his petition because the UIAB's answer was not verified and was filed late.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant is an attorney who left private practice in 2007 to work as a law clerk at the superior court. Appellant lost his job at the superior court due to the economic recession. He was unable to find employment either in the public or private sector.

Appellant filed a claim for unemployment benefits. His benefits commenced on April 4, 2010, with a weekly benefit amount of $450. Appellant believed that as long as his net earnings from any self-employment, less $25 or 25 percent of his wages, did not equal or exceed his weekly benefit amount, he would receive full or partial benefits. (Unemp. Ins. Code, § 1252, subd. (a)(2).)[2] Appellant disclosed to EDD that he intended to seek work as an independent contractor while receiving benefits.

---

[1] All further statutory references are to the Unemployment Insurance Code unless otherwise indicated.

[2] Section 1252 provides, in relevant part: "(a) An individual is 'unemployed' in any week in which he or she meets any of the following conditions: [¶] (1) Any week during which he or she performs no services and with respect to which no wages are payable to

2

Starting in March 2010, through the week ending May 8, 2010, appellant expended money setting up his business as an independent contractor. Specifically, appellant spent "$7,691.45 for business equipment and supplies (including computer, printer, software, business cards, telephone and other miscellaneous equipment and supplies), $444.24 for the business use of his home, $743 for bar association dues and other professional dues, $84.50 for business entertainment, $14.43 for business gifts, $1,800 for professional fees he paid for services that the [appellant] declined to describe due to confidentiality grounds, $71.46 in telephone charges, $26.15 for miscellaneous sales tax, and $50 for miscellaneous other expenses." These expenses totaled $10,925.23.[3]

When appellant certified his claim for benefits for the week ending May 8, 2010, he reported he had worked 22 hours that week.[4] However, appellant did not report any wages. Instead, he took the position that his business expenses had exceeded his earnings.

On May 26, 2010, appellant was informed by EDD that he was not eligible for unemployment benefits for the week ending May 8, 2010, based on his earnings of $2,750 as an independent contractor during that week. On June 12, 2010, appellant appealed EDD's decision to the UIAB. On July 19, 2010, UIAB sent appellant notice of a hearing scheduled for July 28, 2010.

After the July 28, 2010 hearing, Administrative Law Judge (ALJ) Howard Wein issued a decision affirming the denial of appellant's unemployment benefits for the week

_____

him or her. [¶] (2) Any week of less than full-time work, if the wages payable to him or her with respect to the week, when reduced by twenty-five dollars ($25) or 25 percent of the wages payable, whichever is greater, do not equal or exceed his or her weekly benefit amount."

[3] Appellant admitted the computer, printer, and other items purchased will be used on work he will perform as an independent contractor on future work assignments, not just the work he performed during the week ending May 8, 2010.

[4] Appellant initially erroneously reported that he worked 22 hours that week. He later corrected the figure to 19.2 hours.

ending May 8, 2010. On September 15, 2010 appellant appealed the ALJ's decision to the UIAB. UIAB affirmed the ALJ's decision that appellant did not qualify for unemployment insurance benefits for the week ending on May 8, 2010.

Appellant filed his petition for writ of mandate and writ of administrative mandate on April 26, 2011. The UIAB filed an unverified answer on July 13, 2011. A briefing schedule was set for January and February 2012, with a hearing date of March 2, 2012. In his reply brief, appellant objected to the trial court's consideration of the joint opposition brief filed by UIAB and EDD, which was filed five days after it was due.

On the day of the hearing, the trial court issued a tentative decision denying appellant's petition. The court was not persuaded by appellant's arguments that, due to business expenses, he had no wages for the week ending May 8, 2012, within the meaning of section 1252.

At the hearing, appellant reiterated his objection to any consideration of respondent's late brief unless the court made a finding of mistake, inadvertence or excusable neglect. The court offered to continue the matter to allow appellant more time to respond. Appellant declined the offer.

At the hearing appellant raised for the first time the issue that respondent's responsive pleading was not verified. Appellant stated: "The last thing is that briefly, the answer isn't verified like it's supposed to be. We didn't have the opportunity, for whatever reason, the service copy was late, I'm pointing it out for the record." After inquiring of counsel for UIAB whether he had a verified copy, the court stated: "I can't take default. In any event, it's sloppy." The issue was not raised again during the hearing.

The court issued its ruling later the same day, denying appellant's petition. Judgment was entered on April 9, 2012.

On June 8, 2012, appellant filed his notice of appeal.

4

## DISCUSSION

## I. Standard of review

"In reviewing a decision of the [UIAB], the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence. [Citations.]" (*Lozano v. Unemployment Ins. Appeals Bd.* (1982) 130 Cal.App.3d 749, 754 (*Lozano*), citing Code Civ. Proc., § 1094.5, subds. (b) & (c).) In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. (*Lozano*, at p. 754.) However, where the probative facts are not in dispute, the determination of the trial court may be reviewed as a matter of law. (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585.)

Evidentiary and discovery rulings are reviewed for abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900; *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061.)

## II. Applicable statutes

Section 1252 provides, in pertinent part:

"(a) An individual is 'unemployed' in any week in which he or she meets any of the following conditions:

"(1) Any week during which he or she performs no services and with respect to which no wages are payable to him or her.

"(2) Any week of less than full-time work, if the wages payable to him or her with respect to the week, when reduced by twenty-five dollars ($25) or 25 percent of the wages payable, whichever is greater, do not equal or exceed his or her weekly benefit amount.

"[¶] . . . [¶]

"(c) For the purpose of this section only 'wages' includes any and all compensation for personal services whether performed as an employee or as an independent contractor or as a juror or as a witness, but does not

5

include any payment received by a member of the National Guard or reserve component of the armed forces for inactive duty training, annual training, or emergency state active duty."

Appellant also cites section 1279, which provides, in pertinent part:

"(a) Each individual eligible under this chapter who is unemployed in any week shall be paid with respect to that week an unemployment compensation benefit in an amount equal to his or her weekly benefit amount less the smaller of the following:

"(1) The amount of wages in excess of twenty-five dollars ($25) payable to him or her for services rendered during that week.

"(2) The amount of wages in excess of 25 percent of the amount of wages payable to him or her for services rendered during that week.

"[¶] . . . [¶]

"(c) For the purpose of this section only 'wages' includes any and all compensation for personal services whether performed as an employee or as an independent contractor or as a juror or as a witness, but does not include any payments, regardless of their designation, made by a city of this state to an elected official thereof as an incident to public office, nor any payment received by a member of the National Guard or reserve component of the armed forces for inactive duty training, annual training, or emergency state active duty."

## III.  Meaning of the term "wages" for self-employed persons or independent contractors

The dispute in this case involves the meaning of the term "wages" in the relevant statutes as that term is applied to those self-employed or independent contractors. Appellant argues that under both sections 1252 and 1279, the "wages" of one who is self-employed or an independent contractor is the net income from the individual's business. Respondents, on the other hand, argue that the term "wages" means the gross earnings of a self-employed person or independent contractor in any given week.  Our charge, therefore, is to determine the meaning of the term "wages" in these two statutes as applied to a person who is self-employed or an independent contractor.

### A. *The plain meaning of the statutes controls*

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.]" (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.) If the statutory language is unambiguous, then its plain meaning controls. However, if the language supports more than one reasonable construction, then we may look to extrinsic aids, such as the legislative history and the objects to be achieved by the statute. (*Id.* at p. 1107.)

The term "wages" is defined in the statutes themselves. The definition quite broadly includes "any and all compensation for personal services." (§§ 1252, subd. (c); 1279, subd. (c).) The meaning of these words is plain and unambiguous. When an individual is seeking unemployment benefits, EDD is entitled consider *any and all* compensation that an individual receives in determining whether the individual is entitled to receive unemployment benefits. The statutes are completely devoid of any language suggesting the individual may deduct his business expenses from his gross weekly compensation prior to reporting the income to EDD.

Under the circumstances, we find that the plain meaning of the statute must control, and we hold that under sections 1252 and 1279, the wages of a self-employed person or independent contractor include "any and all compensation" that the individual receives in a given week.

### B. *The authority cited by appellant is not controlling*

#### 1. Authority cited by appellant

Appellant points out that the meaning of the word "wages" as applied to a self-employed person was fleshed out in an opinion of the Attorney General, 15 Ops.Cal.Atty.Gen. 311 (1950) (the Attorney General opinion). The UIAB had inquired as to what constituted the "wages" of a self-employed person, to which the Attorney General answered:

7

"We believe therefore that 'wages' may properly be considered to be the income from his business. From the gross income, it appears proper and equitable to deduct the expenses of the business, and to consider only the net income as wages. Net income is normally made up of the 'wages of management,' return on capital, and pure profit. Each of these concepts is so nebulous, and so difficult of ascertainment in the case of the average business as to be practically incapable of determination. We believe therefore that for purposes of simplification of the administration of the act, the net income of the business may be considered as the 'wages' of a self-employed claimant. [Citation.]"

(Atty. Gen. Opn., p. 315.)

Appellant also points to *In re Armen* (1963) California Unemployment Insurance Appeals Board Precedent Benefit Decision No. P-B-201 (*Armen*), in which the UIAB adopted and applied the Attorney General opinion. The UIAB stated:

"In Benefit Decision No. 5622, and in our subsequent decisions, we have followed the California Attorney General's Opinion No. 50/76 (15 Ops.Cal.Atty.Gen. 311) which concluded that self-employed persons and independent contractors are 'unemployed' insofar as they are not performing 'services' but that the net income of a self-employed person constituted 'wages.' So long as the 'wages' of a self-employed individual are less than his weekly benefit amount, he is 'unemployed' (Benefit Decisions Nos. 5633, 5903, 6177, 6231, 6669, 6679 and 6707)."

In *Worthington v. Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 388-389 (*Worthington*), the Court of Appeal referenced the Attorney General opinion, stating: "In 1950, the Attorney General issued his opinion that under then section 55 of the Unemployment Insurance Act, now section 1279 of the Code, 'wages' which must be counted as earned must include the net income of the business of a self-employed claimant. [Citation.] Opinions of the Attorney General are entitled to great weight. [Citations.]" Appellant argues that through the *Worthington* opinion, the Court of Appeal thus made the cited Attorney General opinion the law of this State.

Appellant suggests that the EDD, UIAB, and superior court have ignored or attempted to overrule this precedent in reaching the conclusion that appellant was not qualified for unemployment insurance for the week ending May 8, 2010.

8

## 2. Respondent's arguments

Respondent makes two arguments in an effort to persuade this court that the Attorney General opinion is inapplicable. First, respondent argues that the Attorney General opinion defines the term "wages" only as that term relates to a self-employed person. Respondent argues that appellant is an independent contractor, not a self-employed person, therefore the definition found in the opinion is not at all applicable. We disagree. The definition found and quoted in the Attorney General opinion applies to both self-employed persons and independent contractors. As made clear at the beginning of the Attorney General opinion, it was meant to clarify "Coverage of self-employed and independent contractors, [and] 'wages' of such groups." The use of the plural in this descriptive paragraph suggests that the definition of "wages" set forth therein is applicable to both self-employed individuals and independent contractors.

Next, respondent points out that in its discussion of the term "wages," the Attorney General opinion references only former section 55 of the Unemployment Insurance Act, now section 1279. Because this discussion did not specifically reference former section 9.2 of the Unemployment Insurance Act -- now section 1252 -- respondent argues that this definition of the term "wages" is inapplicable to the question of whether or not appellant was unemployed under the terms of section 1252. We also reject this argument. First, we note that former section 9.2 is referenced generally within the quoted Attorney General opinion. In addition, the language of section 1279, subdivision (c) describing "wages" as "any and all compensation for personal services whether performed as an employee or as an independent contractor," is identical to that found in section 1252, subdivision (c). We must assume that the Legislature intended this identical language in both statutes to be given the same meaning. (*People v. Wells* (1996) 12 Cal.4th 979, 986 ["the court presumes that the Legislature intended that similar phrases be accorded the same meaning"].)

In addition to these efforts to distinguish the subject matter of the Attorney General opinion, respondent implicitly suggests that we simply ignore the authorities cited by appellant in favor of its interpretation of sections 1252 and 1279. Without

9

citation to authority, respondent claims in its supplemental letter brief that the relevant California statutory law "addresses *gross* wages earned within a claim week to determine eligibility for unemployment benefits." Respondent explains that the law cited by appellant is inconvenient, claiming that the "EDD is not statutorily promulgated or physically constructed to address the multitude of possible deductions that a claimant may claim in order to reduce the wages earned during the claim week." Respondent provides no authority or argument explaining its contention that we should discount the relevant Attorney General opinion and related case law.

### 3. Analysis

Attorney General opinions are entitled to great weight. Generally, an Attorney General opinion "is not a mere 'advisory' opinion, but a statement which, although not binding on the judiciary, must be 'regarded as having a quasi judicial character and [is] entitled to great respect,' and given great weight by the courts. [Citations.]" (*Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245, 263.) Individuals affected by an Attorney General opinion "must regard the authoritative opinion of the highest law enforcement officer of the state as having a definite impact" on their obligations under the subject laws. (*Ibid.*) An opinion of the Attorney General is more than "a mere exercise in academic interpretation." (*Id.* at p. 264.) In other words, when the office of the Attorney General promulgates an official opinion, it must assume that it will be relied upon by affected members of the public. However, Attorney General opinions are not binding on this court. (*Watershed Enforcers v. Department of Water Resources* (2010) 185 Cal.App.4th 969, 984, fn. 11.)

As appellant points out, the Attorney General opinion in question has also been applied in subsequent administrative decisions, such as *Armen*. This administrative construction of the statute is also entitled to great weight. (*Whitcomb Hotel, Inc. v. California Employment Com.* (1944) 24 Cal.2d 753, 756-757.) "Whatever the force of administrative construction, however, final responsibility for the interpretation of the law rests with the courts." (*Id.* at p. 757.) Significantly, "an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is

10

subsequently reenacted without change. [Citations.]" (*Id.* at pp. 757-758.) Thus, neither the Attorney General opinion nor any administrative interpretation of the relevant statutes is binding on this court.

We disagree with appellant's position that in *Worthington*, the Attorney General opinion was given the force of law. In *Worthington*, the appellant was a young lawyer who had been separated from his employment and subsequently applied for and received unemployment benefits. However, the lawyer had commenced to practice law by himself, and demand was made upon him to disclose his earnings to the EDD. He did so under protest, taking the position that the term "wages" did not apply to income gained from self-employment. (*Worthington, supra*, 64 Cal.App.3d at pp. 386-387.) The Court of Appeal disagreed, finding that the income the lawyer received fit into the definition of "wages" set forth in section 1279 as "any and all compensation for personal services." The court made a passing reference to the Attorney General opinion to emphasize that the Attorney General considered the language of section 1279 to include wages earned by self-employed individuals. The question of whether a self-employed person or independent contractor must report his net income, or gross income, on any given week, was not considered or addressed at any length. Decisions are not controlling authority for propositions not considered in the case. (*NJD, Ltd. v. City of San Dimas* (2003) 110 Cal.App.4th 1428, 1447.)

Having considered the parties' respective positions and the authorities cited, we decline to follow the Attorney General opinion to the extent that it suggests a self-employed person or independent contractor must only report his net income to determine his eligibility for unemployment benefits on any given week. The case before us demonstrates the impracticality of such a rule, and the difficulty imposed on the EDD in administering such a rule. As set forth above, the plain language of the statute requires that a self-employed person or independent contractor report "any and all compensation" for consideration in order for EDD to determine his or her status as an unemployed person. (§ 1252, subd. (c).)

11

**IV. The superior court correctly found appellant ineligible for benefits for the week ending May 8, 2010**

Although we have elected not to adopt the Attorney General opinion insofar as it defines the term "wages" of a self-employed person or independent contractor under section 1252 to be the net income of the individual's business, we understand that appellant may well take the position that he justifiably relied on the Attorney General opinion in calculating and reporting his weekly wages for the week ending May 8, 2010. However, for the reasons set forth below, even if the term "wages" could be understood to mean the net income of a self-employed person or independent contractor, we would find no error in the trial court's ruling denying appellant's writ.

*A. General principles of accounting do not permit immediate deduction of all of appellant's business expenses in determining net income*

Appellant calculates his net income for the week ending May 8, 2010, by deducting every penny he spent setting up his business over the previous three months, including money spent on the purchase of a computer, printer, software, business cards, telephone and other miscellaneous supplies, as well as professional dues, among other things. We find appellant's method for calculating his weekly net income is unsupportable.

Appellant cites the Attorney General opinion as authority for the proposition that to determine "net income," the proper calculation is to "deduct the expenses of the business." (Atty. Gen. Opn., p. 315.) The Attorney General then gives a basic definition of the concept: "Net income is normally made up of the 'wages of management,' return on capital, and pure profit." (*Ibid.*) Nowhere in the cited opinion, or any other document cited by appellant, is there a breakdown of the specific expenses of the business that may properly be deducted in any given accounting period for the purpose of calculating the individual's net income for that accounting period. In particular, appellant cites no authority suggesting that all of the capital investment -- or money invested to purchase assets for the business -- may be deducted from the compensation of any given week in order to determine net income for that week.

12

In the absence of further guidance in the area of unemployment insurance, it is helpful to explore the commonly accepted methods for determining net income for a given accounting period.  The concept of net income is important in the tax context, because tax is generally measured by the net income of a business.  (*Taihieyo Cement U.S.A., Inc. v. Franchise Tax Bd.* (2012) 204 Cal.App.4th 254, 263 (*Taihieyo*).)  Therefore we look to generally accepted accounting principles in the tax context to form an understanding of the conventional method of determining net income.[5]

The term "net income" means "gross income less allowable deductions." (*Taiheiyo, supra*, 204 Cal.App.4th at p. 263.)  Generally speaking, in the tax context, deductions are allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  (26 U.S.C.S. § 162(a).)  Examples of such expenses include salaries or other compensation paid out for services; traveling expenses; and rentals or other payments required to be made as a condition of carrying out the business.  (26 U.S.C.S. § 162(a)(1)-(a)(3).)  However, deductions for capital expenditures are barred.  (26 U.S.C.S. § 263(a).)  This includes amounts paid to acquire personal tangible property.  (26 C.F.R. § 1.263(a)-1T(b) (2013).)  Computers and peripheral equipment generally fall into the category of capital expenditures.[6]  Generally speaking, when reporting taxable income to the Internal Revenue Service, expenses incurred to acquire a computer, or related equipment that will be used in future accounting periods, may not be deducted from gross revenue to determine taxable net

[5]     Respondent disputes the relevance of federal tax law in the context of state unemployment insurance.  We do not suggest that the Internal Revenue Code and its associated regulations are at all binding, nor do we suggest that the complex exceptions and deductions are relevant.  We simply use the basic accounting principles that can be gleaned from this body of law to discuss the meaning of the term "net income," which has not been further defined in the context of unemployment insurance.

[6]     We understand that there are some exceptions to this general rule, but as set forth above, we are using the area of tax law only as a general guide, and we will not consider whether any particular exception might apply in appellant's particular case when reporting to the Internal Revenue Service.

income.  However, any such property may be subject to depreciation.  (See 2012 Instructions for Schedule C, Part II, Expenses, Line 13; <http://www.irs.gov/instructions/i1040sc/ch02.html#d0e531>.)[7]

In addition, expenses incurred in setting up a business are generally not immediately deductible in determining net income.  (See *Fishman v. Commissioner* (7th Cir. 1988) 837 F.2d 309, 312 (*Fishman*) ["In a long line of decisions under section 162, the courts (including the Tax Court) have held that 'pre-opening' expenses, that is, expenses incurred before the taxpayer's trade or business begins to operate (what we are calling 'start-up costs'), are not deductible.  [Citations.]  They yield benefits over the entire life of the enterprise, and therefore must be capitalized"].)[8]  The *Fishman* taxpayers had incurred numerous start-up costs, including professional fees, advertising, promotion, consulting, office, and insurance expenses.  (*Id.* at p. 311.)  The court explained that "income and expense must be matched temporally in order to minimize the inevitable misallocations of resources that a taxing system creates.  (This principle is codified in section 263(a) of the [Internal Revenue] Code, which forbids immediate deduction of 'capital expenditures' even if they are ordinary and necessary business expenses.  [Citation.]"  (*Fishman*, at p. 312.)

Thus, under generally accepted accounting principles, the expenses appellant incurred in setting up his business may not be deducted from his gross revenue to

---

[7]     The *Taiheiyo* court presented a "brief review of general accounting terms," explaining that "[o]rdinary and necessary expenses paid or incurred during the taxable year in carrying on a business can be deducted from gross income.  [Citations.]  On the other hand, capital assets which have 'a useful life which extends substantially beyond the close of the taxable year' are subject to depreciation.  [Citation.]"  (*Taiheiyo, supra*, 204 Cal.App.4th at p. 263.)  Appellant does not argue that the concept of depreciation should apply in the unemployment context, therefore we will not discuss the subject further.

[8]     Although we are discussing the definition of "net income" in the context of state unemployment insurance law, we rely on federal case law to form a general understanding of the basic principles for determining net income.  (See, e.g., *People v. Hagen* (1998) 19 Cal.4th 652, 661; *Holmes v. McColgan* (1941) 17 Cal.2d 426, 429-430.)

14

determine his net income for any single week. Appellant has cited no authority suggesting that a different rule applies when determining net income in the unemployment context. Thus, the ALJ correctly concluded that those deductions appellant incurred in "setting up" his business were impermissible. Because appellant failed to distinguish between his capital investment and any ordinary business expenses, the ALJ was justified in disallowing them all. Appellant's wages of $2,750 for the week ending May 8, 2010, exceeded his weekly benefit amount, therefore he was not "unemployed" as that term is defined in section 1252.

### B. Appellant's expenses were not incurred during the accounting period in question

The general accounting principle that income and expense must be matched temporally (see *Fishman, supra*, 837 F.2d at p. 312) is also problematic for appellant. In the context of unemployment, the accounting period for determining the recipient's eligibility for benefits is very brief. Eligibility for unemployment benefits is determined on a *weekly* basis. As the ALJ pointed out:

> "[T]here is no evidence of record establishing how much of the $10,925.23 expenses the [appellant] incurred in setting up and operating his business could appropriately be deducted from [appellant's] earnings <u>for the single week ending May 8, 2010.</u> For example, several of [appellant's] major expenses were for equipment and supplies that [appellant] purchased prior to the week ending May 8, 2010, which [appellant] will be able to use in his business long after the week ending May 8, 2010 -- such as the purchase of a computer and a computer printer. Accordingly, the evidence of record does not support deducting any of these expenses from the $2,750 earnings in the week ending May 8, 2010 to determine whether or not [appellant] was employed in that single week."

Thus, even if certain of the expenses were deductible for the purpose of determining appellant's net income, appellant failed to present evidence that those expenses were incurred during the accounting period in question: specifically, the week ending May 8, 2010. In fact, appellant admitted that some of those expenses were incurred starting as early as March 2010. Appellant has failed to point out any evidence

15

to contradict the ALJ's findings of fact on this issue. The judgment of the trial court is supported by substantial evidence and must be affirmed. (*Lozano, supra*, 130 Cal.App.3d at p. 754.)[9]

## V. Appellant forfeited his objection for lack of a verified answer

"Appellate courts are loathe to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.]" (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 (*JRS*).) "'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.' [Citation.]" (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949.)

Issues presented on appeal must actually be litigated in the trial court -- not simply mentioned in passing. "'[W]e ignore arguments, authority, and facts not presented *and litigated* in the trial court.'" (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11, fn. omitted, italics added.)

Appellant did not preserve for appeal his objection that respondent failed to provide a verified answer to his petition. Appellant mentioned the issue at the hearing, stating only: "The last thing is that briefly, the answer isn't verified like it's supposed to be. We didn't have the opportunity, for whatever reason, the service copy was late, I'm pointing it out for the record." Appellant cited no statutes or case law for the trial court to consider, and did not give respondent the opportunity to respond to any such argument.

---

[9]     Appellant argues alternatively that the EDD was not permitted to disagree with appellant's calculations and deny benefits. Appellant argues that the EDD's duty is ministerial, and it is confined to determining whether appellant completed a continued claim form in accordance with the regulations. We reject appellant's position. "Under the administrative scheme of the Unemployment Insurance Code, the EDD has no underlying monetary obligation to the claimant until it determines the claimant is eligible for the benefits. [Citation.]" (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1023.)

16

Significantly, appellant did not object when the court declined to take default. Appellant did not seek dismissal, nor did he at any time ask that respondent's brief be stricken.

A trial court has broad discretion to control the proceedings before it in the furtherance of justice. (Code Civ. Proc., § 128.) This includes allowing amendments to pleadings to correct any errors or mistakes. (Code Civ. Proc., § 473, subd. (a)(1); *Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1162-1163.)[10] Generally, "'California courts have "a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others." [Citation.] . . .'" (*Board of Trustees*, at p. 1163.) Significantly, "'the discretion to be exercised is that of the trial court, not that of the reviewing court.'" (*Ibid*.)

Had appellant presented a timely objection to the lack of verification of respondent's pleading, the trial court could have exercised its discretion to permit respondent to amend the pleading to conform to the rules. The trial court did not abuse its discretion in declining to strike the pleading or take default where appellant did not raise the issue until the end of the hearing on the writ petition. Appellant's strategy of simply "pointing . . . out . . . for the record" a pleading defect which he intended to argue fully on appeal subjects both the court and the parties to an unfair "bait and switch." "Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a [burdened] judicial system." (*JRS, supra*, 115 Cal.App.4th at p. 178.) Under the circumstances, we find that appellant forfeited any objection to respondent's failure to file a verified answer.

## VI. The trial court did not abuse its discretion in considering respondent's late filed brief

In his reply brief filed in the superior court, appellant objected to the court's consideration of respondent's untimely opposition brief, which he claims was filed and

---

**10**    Failure to verify a pleading, where verification is required by statute, "is a mere defect curable by amendment." (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915, fn. omitted.)

17

served five days late. Appellant cited *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 28-30 (*Mann*) and *Kapitanski v. Von's Grocery Co.* (1983) 146 Cal.App.3d 29, for the proposition that courts may only consider late filed briefs on a finding of mistake, inadvertence, surprise, or excusable neglect. On appeal, appellant complains that the superior court considered the late filed brief without making the necessary finding.

"Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.) Furthermore, in the absence of evidence to the contrary, "'[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Evidence Code section 664 also provides a presumption that the trial court was aware of, and followed, the applicable law.

Taking these standards into consideration, we conclude that the trial court made an implied finding of mistake or excusable neglect. We review such a finding for abuse of discretion. (*Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 787.) As the court pointed out, appellant's opening brief was also untimely. The court could have implicitly concluded that respondent's mistake stemmed from a miscalculation based on appellant's late filing. Furthermore, appellant forfeited any claim of prejudice arising from respondent's late filed brief. The court offered to continue the matter to give appellant more time to submit his reply and consider his arguments. The court emphasized: "I want you to expressly consider that option because I understand the rule and I understand the need for you to have a full, fair opportunity to reply. If you feel, for whatever reason, you haven't had it, I want to give you that opportunity." Appellant declined the offer, stating: "I think that with my oral argument, I've probably cured that."

"Cognizant of the strong policy favoring the disposition of cases on their merits [citations], judges . . . frequently consider documents which have been untimely filed." (*Mann, supra*, 38 Cal.3d at p. 17.) Here, the trial court considered both appellant's untimely filed petition, and respondent's untimely filed answer. Upon objection from appellant, the trial court suggested that appellant accept the trial court's offer of additional time to prepare. Appellant declined. Under the circumstances, we find no abuse of discretion in the trial court's decision to consider respondent's late filed pleading.

## DISPOSTION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
FERNS

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.