Filed 6/2/26  Baird v. PulteGroup CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


MARK A. BAIRD et al.,

    Plaintiffs and Appellants,

    v.

PULTEGROUP, INC. et al.,

    Defendants and Respondents.

D085988

(Super. Ct. No. CVPS2201015)


    APPEAL from a judgment of the Superior Court of Riverside County, Manuel Bustamante, Jr., Judge.  Affirmed in part, reversed in part, and remanded with directions.

    Gelb Law, Yisrael Gelb; The Wright Law Firm and Jamie Wright, for Plaintiffs and Appellants.

    Morgan, Lewis & Bockius, Beth S. Joseph, Joseph D. Magrisso, Stephanie Schuster, Regina Agopian and Jason Mills, for Defendants and Respondents.

Mark and Bradley Baird are a married couple who sought to buy a home from defendant Pulte Home Company, LLC. Mark is a veteran, and the couple intended to use a United States Department of Veterans Affairs (VA)-backed home loan (a VA loan) to finance the purchase. The Bairds applied for a VA loan from defendant Pulte Mortgage LLC, but were denied on the ground that they did not have sufficient monthly income.

Pulte Home had a policy of limiting customization options for VA-loan purchasers to 10 percent of the base purchase price, ostensibly because VA appraisers were conservative in their appraisals and VA borrowers would too often cancel after the customizations were complete based on a low appraisal. This policy was communicated to the Bairds by their principal sales contact, defendant Brett Picano. The sales process did not proceed smoothly, and at one point Picano purported to "void the purchase agreement paperwork" after a dispute with the Bairds about the terms of the agreement. The Bairds claim Picano's actions were retaliatory because they told Picano that Mark had filed a complaint with the Civil Rights Department (CRD) for anti-veteran discrimination.

Picano and his supervisor were replaced by a different sales team, and the same or more generous terms were offered to the Bairds. Although the Bairds were ultimately preapproved for a VA loan from a second lender and signed a purchase agreement with Pulte Home, they withdrew from the contract a few days later, instead purchasing a home from a different company using a VA loan from a third lender.

The Bairds sued Picano, Pulte Home Company, and Pulte Mortgage, as well as two affiliated entities, Del Webb Communities, Inc. and PulteGroup Inc., under the Fair Employment and Housing Act (FEHA), claiming

2

discrimination on the basis of veteran status.  The Bairds argued Pulte Home's 10 percent policy was discriminatory and that Pulte Mortgage had denied their mortgage application for discriminatory reasons.  The superior court granted summary judgment in favor of all defendants.

On appeal, the Bairds argue the Pulte Home policy constituted both unlawful disparate treatment and disparate impact.  Because defendants did not seek summary adjudication of the Bairds' disparate treatment theory separate from the disparate impact theory, and because their arguments do not negate the cause of action as a whole, Pulte Home is not entitled to summary judgment or adjudication of this claim.  Because the claims are interrelated, we find Picano is not entitled to summary judgment or adjudication of the Bairds' claim that he aided and abetted Pulte Home's discrimination.

As to the remaining defendants and claims, however, we find that summary judgment or summary adjudication was appropriate.  The Bairds fail to make any arguments establishing that Del Webb or PulteGroup should be liable for the actions of any other defendant, thus forfeiting such arguments.  Although the Bairds argue Pulte Mortgage discriminated against them by denying their loan application, we find Pulte Mortgage presented a legitimate, nondiscriminatory reason for denying the Bairds' loan application, and the record does not raise a reasonable inference of discrimination.  Thus, the trial court properly granted summary judgment to Del Webb, PulteGroup, and Pulte Mortgage.

Finally, the Bairds seek to raise a new argument, claiming that Pulte Home and Picano retaliated against them for protected activity by temporarily voiding the sales contract.  Because this argument was not

raised in the trial court, where the Bairds denied that their claim concerned the sales contract at all, we find it is not properly preserved for appeal.

We affirm the judgment in favor of PulteGroup, Pulte Mortgage, and Del Webb, and reverse the judgment in favor of Pulte Home and Picano. We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   *The Bairds' Dealings with Pulte Home and Picano*

Pulte Home owns a new housing development in Riverside County, called the Del Webb at Rancho Mirage. Buyers can select from several model home styles and then add optional upgrades to the basic model, such as higher-end cabinets, crown molding, or wood flooring. Pulte Home is an affiliate of Pulte Mortgage, which offers financing, although buyers are free to obtain financing through other companies.

The Bairds sought to purchase a new Rancho Mirage home in 2021 using a VA loan. Though they are sold by private lenders like conventional mortgages, VA loans are guaranteed by the federal government and subject to certain terms. One benefit of using a VA loan is that an eligible buyer can borrow up to 100 percent of the loan's value and thus does not need to make a down payment to purchase a home. But a home purchased with a VA loan must be appraised by a government-approved appraiser. According to the parties, these appraisers "have a reputation for being conservative in their property valuations."

After learning the Bairds intended to use a VA loan, the Pulte Home salesperson, Brett Picano, said that they "would not get one of the Rancho Mirage homes if Mark used a VA Loan … and started immediately trying to steer [the Bairds] to a conventional loan." According to Picano, "with

4

conventional loans [the Bairds] would get all these upgrades," but with a VA loan they "would be very limited with upgrades." He showed the Bairds a folder comparing the upgrades available for buyers using conventional loans and the "significantly limited" upgrades available to purchasers using VA loans.

Defendants dispute that Pulte Home has a policy of not allowing VA loan users to add certain upgrades, but claim it "permit[s]" salespeople "to counsel buyers intending to use a VA loan that upgrades of more than 10% of the home's purchase price may result in a low appraisal that affects their ability to finance 100% of the purchase price." As a Pulte Home employee explains, "when buyers add what an appraiser considers an excessive amount of optional upgrades and 'over-improve[]' the home, they can add tens of thousands of dollars to the total purchase price, while the appraiser may not value those options as adding the same amount to the home's appraised value." According to this employee, "[u]pgrades can pose a particular challenge for VA loan approvals where the buyer typically does not bring any down payment" and the appraisers are more conservative.

This became a sticking point for the Bairds, as they wanted to add more than 10 percent of their base home value in upgrades and were given conflicting information about Pulte Home's policy. Despite what he had said in their initial discussion, Picano told the Bairds their optional upgrades would not be capped at 10 percent, and they moved forward with a purchase agreement. But they were later told that their upgrades *would* be capped at 10 percent. This led to a "heated discussion" with Picano, in which the Bairds told him they had made a CRD complaint against him following their first meeting. After the call, Picano sent an e-mail stating, "Due to your recent and continued behavior as well as your continued threats along with

5

not agreeing to the terms set forth by the seller I am going to void the purchase agreement paperwork. … If you decide that you want to purchase a home [with Pulte Home] and agree to the terms set forth by the seller I would be happy to assist you." Picano's manager followed up, confirming that Pulte Home "limits the availability of options offered to be selected to be at or below 10% of the base price of the home" and stating, "we ensure to have [zero] exceptions for this policy."

At this point, Pulte Home's vice president of sales stepped in, directing that the Bairds' lot be held for them and assigning a new salesperson to the account. He informed the Bairds that they could move forward with the purchase, including any upgrades they wanted. Pulte Home offered the same total purchase price and agreed to credit the Bairds with an extra $4,000 closing-cost incentive as well as $1,980 the Bairds claimed they had incurred to hire an attorney.

The new salesperson continued to sow confusion regarding the options cap, first telling the Bairds, "There is approval for you to spend over 10% of the base price threshold on option upgrades," but later stating, "In practical terms you can spend up to $53,799," or 10 percent of the base purchase price of $537,990 "without additional deposits." The parties dispute whether the Bairds ultimately selected upgrades that cost more than 10 percent of the base price of the home. Defendants claim the Bairds' options amounted to 11.3 percent of the purchase price. The Bairds claim they paid cash for some of the upgrades, and the remainder amounted to just 7.9 percent of the base purchase price.

On October 4, 2021, the Bairds signed a contract to purchase a new home from Pulte Home. A few days later, the Bairds decided to back out of the sale. Pulte Home terminated the contract on October 8, 2021, and

6

returned the Bairds' deposit.  The Bairds later contracted with a different company to buy their current home.

**B.     *The Bairds' Mortgage Applications***

In August 2021, the Bairds applied for a VA loan with Pulte Mortgage to finance their Pulte Home purchase.  They listed their income as Social Security benefits amounting to $2,626 per month.  At the time, it appears Bradley had "recently started a commission position, with no earnings yet." The Bairds listed a $257,164 trust fund belonging to Bradley as "savings."

A Pulte Mortgage employee reached out to the Bairds and told them that their limited income would be a "hurdle" to approval, specifically informing them that Pulte Mortgage would "want to see a total of $75,000 of annual income."  A different Pulte Mortgage employee asked the Bairds if the trust could be recharacterized as income to help facilitate approval. Bradley declined to do so "because this is not how [the] Trust is set up." A memorandum in the loan file states the application was "rejected by the underwriter and confirmed by the regional operations manager" due to "excessive obligations in relation to income" and "insufficient income for amount of credit requested."

The Bairds also applied for a VA loan from a second lender, which preapproved a loan for the Rancho Mirage house from Pulte Home.  This second lender ultimately denied their application for a loan to buy their current home because the Bairds could not show "there was … monthly income from the trust."

In June 2022, the Bairds applied for a VA loan with a third lender for their current home, this time including $5,632 per month as income from the trust and over $5,000 per month in Social Security benefits.  The Bairds also

7

received over $50,000 in gifts from a relative to help fund the purchase. The third lender approved the Bairds' loan application as to their current home.

## C.   *This Litigation*

The Bairds sued Pulte Home Company, Pulte Mortgage, Picano, and two other "Pulte" entities (Del Webb and PulteGroup) under FEHA. They alleged "one or more or all of" the entity defendants had a policy of limiting optional upgrades for home buyers who used VA loans, and that the policy was communicated to them and enforced by Picano. They alleged "Pulte Home discriminated against [them] based on [their] veteran status or association with veteran status by … imposing a discriminatory cap on options purchases." The Bairds claimed "Pulte Mortgage did not provide … requested financial assistance because of a policy of discriminating against VA loans." They also alleged that Picano "canceled the[ir] purchase agreement because [the Bairds] complained about the discriminatory options cap and because [the Bairds] informed [him] that they had complained to the [CRD] about discrimination."

The Bairds' complaint asserted a single cause of action against all defendants under Government Code[1] section 12955. They alleged defendants violated:

> (1) Section 12955(a), which "makes it unlawful for the owner of any housing accommodation to discriminate against or harass any person because of the veteran or military status of that person";
>
> (2) Section 12955(d), which "makes it unlawful for any person subject to the provisions of Section 51 of the Civil

---

[1]   Undesignated statutory references are to the Government Code. For brevity, we omit the word "subdivision" when referring to any subdivision of section 12955.

8

Code (business establishments), as that section applies to housing accommodations, to discriminate against any person on the basis of veteran or military status";

(3) Section 12955(e), which "makes it unlawful for any person, bank, mortgage company, or other financial institution that provides financial assistance for the purchase, refinance, organization, or construction of any housing accommodation to discriminate against any person or group of persons because of veteran or military status in the terms, conditions, or privileges relating to the obtaining or use of that financial assistance";

(4) Section 12955(f), which "makes it unlawful for any owner of housing accommodations to harass, evict, or otherwise discriminate against any person in the sale of housing accommodations when the owner's dominant purpose is retaliation against a person who has opposed unlawful practices or informed law enforcement agencies of practices believed to be unlawful";

(5) Section 12955(g), which "makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any of the acts or practices declared unlawful, or to attempt to do so";

(6) Section 12955(i), which "makes it unlawful for any person or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of veteran or military status"; and

(7) Section 12955(k), which "makes it unlawful to otherwise make unavailable or deny a dwelling based on discrimination because of veteran or military status."

Defendants moved for summary judgment or summary adjudication. They argued the Bairds' cause of action "against … PulteGroup and Del Webb fails as a matter of law because PulteGroup and Del Webb … had no

9

involvement in or control over the day-to-day operations of the other Defendants, nor did they employ any of the implicated representatives." Defendants argued they did not deny the Bairds a housing accommodation because the Bairds cancelled the purchase contract. Defendants also argued the Bairds' cause of action "against Pulte Mortgage fails as a matter of law because Pulte Mortgage's denial of [their] mortgage application was not based on a discriminatory motive." Defendants argued they "did not take any adverse action against [the Bairds] in retaliation for protected activity." Finally, defendants moved for summary adjudication of the Bairds' claim for punitive damages.

In their opposition, the Bairds argued they were not alleging that they were unable to purchase a house, but rather that the 10 percent limit on optional upgrades was discriminatory. Defendants responded that "the purported options cap did not apply to" the Bairds and that "there was no options cap – it was a misstatement" that was corrected before the Bairds signed their purchase agreement." (Italics omitted.)

The trial court granted defendants motion "in its entirety." The court specifically found (1) "PulteGroup and Del Webb are not … proper defendants"; (2) "no FEHA claim exists for purportedly 'discriminating' against a [VA] loan"; (3) "Pulte Mortgage's denial of Plaintiffs' mortgage application was not based on a discriminatory motive"; (4) "Defendants did not take any adverse action against Plaintiffs in retaliation for protected activity"; and (5) the Bairds' prayer for punitive damages failed as a matter of law.

## DISCUSSION

### A. *Summary Judgment and Summary Adjudication*

We review a summary judgment or summary adjudication "de novo, applying the same standard as the trial court." (*Manibog v. MediaOne of Los Angeles, Inc.* (2000) 81 Cal.App.4th 1366, 1369.) A defendant moving for summary judgment or summary adjudication has the burden of establishing "that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) To meet this burden, a defendant must show that at least one element of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid.*) If the defendant does not meet its initial burden, the court must deny the motion. (*Ibid.*) Otherwise, " 'the burden shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Id.* at p. 849.) "Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party." (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864.)

### B. *The Discrimination Claim Against Pulte Home*

The Bairds argue Pulte Home's[2] 10 percent cap on optional upgrades discriminates against veterans, either because the policy constitutes disparate treatment of veterans, or at a minimum because it has a disparate

_____

[2] Although the Bairds' claim, without citation, this was a PulteGroup policy or a policy of all the defendants the only evidence cited in their separate statement of undisputed facts indicates that it was Pulte Home's policy.

impact on veterans.  Defendants argue in response that Pulte Home did not cap the Bairds' upgrades; there is no policy of capping upgrades; and such policy would not be facially discriminatory because disfavoring VA loans is not the same thing as discriminating against veterans.

As for the theory that the 10 percent policy has a disparate impact on veterans, defendants argue the Bairds forfeited this contention because they failed to raise it in the trial court.  Defendants also maintain that the claim " 'Pulte was steering veterans to conventional loans' is not a disparate impact theory at all."  In reply, the Bairds assert that the complaint "did not limit its scope to one specific variation of discrimination—whether intent or effect."  In their view, it was defendants' burden to negate all theories of liability in the complaint and defendants failed to do so.

The Bairds alleged that "Pulte Home *discriminated* against [them] based on [their] veteran status or association with veteran status by … imposing a discriminatory cap on options purchases." (Italics added.) " 'Disparate treatment' is *intentional* discrimination against one or more persons on prohibited grounds," but "[p]rohibited discrimination may also be found on a theory of 'disparate impact,' i.e., that regardless of motive, a *facially neutral* … practice or policy … *in fact* had a disproportionate adverse effect on members of the protected class."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354, fn. 20.)  Thus, "housing discrimination under FEHA may be established *either* by disparate treatment or by disparate impact."  (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1420, italics added; see § 12955.8, subd. (b).)  In our view, the complaint's general reference to discrimination encompasses either legal theory.

" 'If a plaintiff pleads several theories [of liability], the defendant has the burden of demonstrating there are no material facts requiring trial on

12

any of them.' " (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 163.)  We believe defendants advanced arguments in their motion that, if correct, would negate the Bairds' theory of discrimination in its entirety.  Specifically, they argued in their reply brief that "the purported options cap *did not apply* to" the Bairds and that "there was no options cap – it was a misstatement."

Given the arguments made by defendants, we do not think the Bairds had the burden of separately highlighting the question of disparate impact.  Negating an alternative theory fairly encompassed with the plaintiffs' pleading is part of the defendants' burden on summary judgment.  (*Pultz v. Holgerson* (1986) 184 Cal.App.3d 1110, 1114.)  We therefore do not agree that the Bairds forfeited their disparate impact argument, and we do not see any procedural failings on either side that would prevent us from considering the parties' arguments on the merits.

Defendants assert Pulte Home did not have a policy of capping options.  They rely principally on the declaration of Pulte Home's vice president of sales, who states Pulte Home "permit[s]" salespeople "to counsel buyers intending to use a VA loan that upgrades of more than 10% of the home's purchase price may result in a low appraisal that affects their ability to finance 100% of the purchase price."  The record also shows the Bairds were told their options would not be limited on at least three occasions.

Nonetheless, the 10 percent cap was invoked a number of times by Pulte Home representatives and was relayed to the Bairds as a firm policy throughout the purchasing process.  According to the Bairds' declarations, Picano informed them of the policy at their first meeting, showing them a folder comparing the upgrades available for buyers using conventional loans with the comparatively limited upgrades available to purchasers using VA loans.  Picano and his manager later reiterated, over e-mail, that Pulte Home

13

had a 10 percent cap, going so far as to state there were "0 exceptions for this policy." A representative of Pulte Mortgage also informed the Bairds that Pulte Home capped options at 10 percent of the base purchase price. And shortly before the Bairds signed the purchase agreement, another Pulte Home salesperson told them their options were limited to 10 percent. Based on this evidence, drawing all reasonable inferences in favor of the Bairds, there is a triable issue of fact as to whether Pulte Home had a policy of imposing a 10 percent cap on optional upgrades for purchasers using VA loans.

Relatedly, there is a genuine dispute as to whether the Bairds' optional upgrades were, in fact, limited. Defendants claim "the total purchase price of $621,591 included $60,601 in optional upgrades selected by [the Bairds]" or approximately 11.3 percent of the $537,990 base purchase price of the home. The Bairds respond that they paid cash for a $18,200 solar energy system, and that the balance of their chosen upgrades amounts to $42,401, or approximately 7.9 percent of the base purchase price.

Both sides merely point to the purchase agreement, without providing any further evidence about how the cap is calculated or to what extent a cash payment for some of the upgrades would change the policy. But the Bairds' argument is consistent with the e-mail from a Pulte Home salesperson who stated they would be permitted to add additional upgrades if they made "additional deposits." Thus, given the limited evidence in this record, there is a question of fact as to whether the Bairds were permitted to slightly exceed the 10 percent cap only because they paid cash for the solar energy system.

With respect to disparate impact specifically, defendants argue the Bairds' "steering" theory is a disparate treatment claim, not a disparate impact claim. This is true as to " 'racial steering,' " which usually refers to a

14

discriminatory " 'practice by which real estate brokers and agents preserve and encourage patterns of racial segregation in available housing by steering members of racial and ethnic groups to buildings occupied primarily by members of such racial and ethnic groups and away from buildings and neighborhoods inhabited primarily by members of other races or groups.' " (*Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363, 366, fn. 1.)  But, while they also use the word "steering," the Bairds do not appear to invoke a similar theory here.

Rather, the Bairds are using the term to mean that Pulte Home pressured purchasers to use conventional loans by offering fewer optional upgrades to those who use VA loans.  We see no reason this theory of liability would require intentional discrimination.  Defendants concede that "the use of a VA loan" is "a factor correlated with veteran status."  Regardless of intent, a policy that discriminates against VA-loan users seems likely to disproportionately affect veterans.  Defendants do not dispute that offering fewer purchase options on a basis that disproportionately affects veterans would be discrimination under FEHA.  We therefore find that defendants have not negated the Bairds' disparate impact theory of discrimination.  Accordingly, Pulte Home was not entitled to summary judgment.

This raises a question regarding the scope of our reversal.  Parties may seek summary adjudication of separate "causes of action" within an action. (Code Civ. Proc., § 437c, subd. (f).)  The Bairds combined different legal theories and factual predicates into a single cause of action against all defendants.  However, courts have found that "a party may present a motion for summary adjudication challenging a separate and distinct wrongful act even though combined with other wrongful acts alleged in the same cause of action."  (*Lilienthal & Fowler v. Superior Cour*t (1993) 12 Cal.App.4th 1848,

15

1854–1855.) Defendants moved for summary adjudication of fourteen "issues" that, to some extent, address "separate and distinct wrongful acts."[3] We therefore find it appropriate to assess most of the issues raised on appeal as a separate cause of action potentially appropriate for summary adjudication.

But because defendants did not seek summary adjudication of the Bairds' disparate treatment theory discretely from the disparate impact theory, and because the arguments raised do not negate this cause of action against Pulte Home as a whole, we are unable to separately address the Bairds' disparate treatment theory. Thus, on remand, the Bairds may continue to litigate their claim that Pulte Home's 10 percent cap on optional upgrades discriminates against veterans, either because the policy constitutes disparate treatment of, or results in disparate impact on, veterans.

## C.    *The Aiding and Abetting Claim Against Picano*

Section 12955(g) makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts or practices declared unlawful in this section, or to attempt to do so." The Bairds argue Picano aided and abetted "Pulte's discrimination." Defendants contend because they "did not violate any subsections of [s]ection 12955, they could not have violated [s]ection 12955(g)."

_____

[3]    Strictly speaking, parties may not seek summary adjudication of "issues" under Code of Civil Procedure section 437c, subdivision (f), but must do so under subdivision (t). That subdivision was not invoked by defendants, and it seems its procedural requirements were not met. This ultimately makes little difference to our resolution of this appeal, as disparate impact was not raised as one of the defendants' "issues" to be adjudicated.

16

Because we find Pulte Home is not entitled to summary adjudication on the discrimination claim, we have no basis to find Picano is entitled to summary adjudication of the aiding and abetting claim under section 12955(g). On remand, the Bairds may continue to litigate their claim that Picano aided and abetted Pulte Home's discrimination.

**D.** ***The Claims Against PulteGroup and Del Webb***

In their motion for summary adjudication, defendants argued the Bairds' cause of action "against Defendants PulteGroup and Del Webb fails as a matter of law because PulteGroup and Del Webb … had no involvement in or control over the day-to-day operations of the other Defendants, nor did they employ any of the implicated representatives." On appeal, the Bairds have not made any direct allegations against Del Webb or PulteGroup, and they fail to explain why these entities should be liable for the actions of other entities. The Bairds make no mention of Del Webb in their briefing, and they only suggest PulteGroup is responsible as the parent company of Pulte Home and Pulte Mortgage. Indeed, they concede that these "Pulte entities were named Defendants but play no significant role in this appeal."

"Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737.) The Bairds do not attempt to make this showing on appeal. "Their failure to adequately develop their point with meaningful legal analysis forfeits the argument." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15.) Accordingly, PulteGroup and Del Webb are entitled to summary judgment.

17

## E.     *The Claims Against Pulte Mortgage*

The Bairds claim Pulte Mortgage denied their loan "for discriminatory reasons." As an initial matter, the Bairds do not clearly articulate their theory of liability. In their opening brief, they suggest Pulte Mortgage denied the loan for retaliatory reasons, because "the Bairds reported that they were going to report Pulte to the authorities." But the Bairds failed to litigate this retaliation argument below.

Defendants' motion for summary judgment argued that no defendant had taken adverse action against the Bairds in retaliation for protected activity. In their opposition, the Bairds did not argue the denial of the mortgage constituted retaliation under section 12955(f). The entirety of the Bairds' argument about section 12955(f) was as follows:

> "Whether the statements made by Pulte employees [are] harassment is a question of fact. By Defendants' own admission, there is a triable issue of fact. Defendants … add that the comments made by Tasch and Picanto do not interfere with the housing arrangement. But that is exactly the point: it is a question of fact and one for the jury."

The Bairds' theory that the mortgage was denied in retaliation for threatening to "report Pulte to the authorities" is not preserved for appeal. (See, e.g., *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011 (*Natkin*) ["Issues presented on appeal must actually be litigated in the trial court"].)

18

Even if it had not been forfeited, we would reject this argument because the Bairds point to no evidence that Pulte Mortgage was aware the Bairds threatened to "report Pulte to the authorities." The Bairds argue, without citation, "A reasonable jury could find that since the contract was canceled, Pulte Homes would have to notify Pulte Mortgage that the mortgage application would have to be withdrawn or canceled." Even if this is true, it does not show that the Bairds' *threat* was also shared with Pulte Mortgage.

The Bairds also argue, vaguely, that the loan was denied for "discriminatory reasons." They have not adduced evidence supporting this assertion. The Bairds were told after their loan application was submitted that Pulte Mortgage wanted to see more income before they would approve the loan, and Pulte Mortgage's internal file reflects that the Bairds' application was actually rejected because they lacked sufficient income. A second lender also denied the Bairds' application because they could not show they were receiving income from the trust. In their third, successful application, the Bairds represented that they received $5,632 per month as income from the trust. The record thus reflects that Pulte Mortgage had a legitimate, nondiscriminatory reason for denying the loan.

The Bairds argue we should not credit this explanation because Pulte Mortgage has not "set forth [its] internal requirements or regulations showing why only annual income may be considered but not trust funds or other sources." We do not think such information is necessary here, as Pulte Mortgage's policy appears consistent with other lenders and there is otherwise no evidence that would raise an inference of pretext.

The Bairds insist they were qualified loan applicants because they had purchased a previous home using a VA loan. Without knowing more about their financial circumstances at the time they were approved for that loan,

19

this fact is not material. A different lender approving a loan at a different time under unknown circumstances does not bear on Pulte Mortgage's analysis of the Bairds' loan application in 2021.

The Bairds also argue they were ultimately approved for a VA loan for their current home. But their June 2022 loan application included over $5,000 per month in additional reported income from Bradley's trust, over $2,000 per month in additional social security income, and tens of thousands of dollars in cash gifts to fund a deposit. These loan applications were materially different. The Bairds' ultimate approval for this loan does not support a reasonable inference of discrimination.

Finally, the Bairds claim, without citation, "that Picano and Tasch had made discriminatory remarks" and allude to "several comments by Picano and other Pulte employees indicating a reluctance to originate veteran loans." But Picano and his manager were not employees of Pulte Mortgage, and the Bairds fail to explain why their comments would reflect the policies or views of Pulte Mortgage. Further, the Bairds fail to cite any evidence that an employee of any defendant "indicat[ed] a reluctance to originate veteran loans." We thus find that Pulte Mortgage was entitled to summary judgment.

## F. *The Retaliation Claim*

The Bairds argue Picano retaliated against them by voiding sales paperwork after the Bairds told him they had filed a CRD complaint. The Bairds failed to press their retaliation argument below and have thus forfeited the argument on appeal. (See *Natkin, supra*, 219 Cal.App.4th at p. 1011.)

As discussed above, the Bairds' opposition to defendants' motion failed to address retaliation at all. They certainly did not argue that Picano's

20

cancellation of the contract itself constituted retaliation under section 12955(f).  To the contrary, the Bairds' opposition papers asserted that their claim was not "about purchasing a home," but rather "PulteGroup's refusal to allow [the Bairds] to use their hard-earned veteran benefits."  In a supplemental opposition brief, they emphasized this point, stating, "This case is not about the ability to contract to buy a home or whether a contract was breached.  It is about Defendants' tactics and corporate policy to prevent veterans from using their VA backed loans."  Given their arguments in the trial court, the Bairds have not preserved their retaliation claim on appeal.

## DISPOSITION

The summary judgment in favor of defendants is reversed, and we remand for further proceedings consistent with this opinion.  The trial court is directed to vacate its order granting summary judgment for all defendants and enter a new order as follows:  (1) granting summary judgment only as to Del Webb, PulteGroup, and Pulte Mortgage; (2) denying the motion for summary judgment as to Pulte Home and Picano; (3) denying the motion for summary adjudication as to the Bairds' claim that Pulte Home's 10 percent cap on optional upgrades is discriminatory; (4) denying the motion for summary adjudication as to the Bairds' claim that Picano aided and abetted Pulte Home's discrimination; and (5) granting the motion for summary adjudication with respect to all other claims against Pulte Home and Picano. The parties shall bear their own costs on appeal.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.

21